VIOLET SWARTZ, Appellant, *v.* HERMAN M. ADAMS AND MARILYN E. ADAMS, Respondents.

No. 8281

April 21, 1977

563 P.2d 74

*Jones, Jones, Bell, LeBaron & Close, Joseph W. Brown,* and *Michael E. Buckley,* Las Vegas, for Appellant.

*Cromer, Barker & Michaelson,* Las Vegas, for Respondents.

## OPINION

By the Court, MOWBRAY, J.:

The principal issue presented is whether a judgment creditor, who knows the whereabouts of a judgment debtor, may levy execution upon that debtor's property without giving the debtor notice reasonably calculated to inform her of the levy. We hold that procedural due process guaranteed by the fourteenth amendment of the Federal Constitution mandates that notice be given.

1. The appeal comes to us from an order of the district judge granting summary judgment in favor of Respondent Adamses and against Appellant Swartz. For the reasons expressed, we reverse and remand the case for further proceedings.

2. Appellant Violet Swartz commenced this action to set aside execution sales of two parcels of real property. She later sought compensatory relief.

Respondent Herman M. Adams had served as counsel for Violet and her blind husband, who is now deceased. After termination of their attorney-client relationship, Adams sued the Swartzes for his attorney's fees. He won a judgment of $6,251.54. Adams, in satisfaction of the judgment, levied on the personal and real property of the Swartzes. By bidding in parts of his judgment, he purchased furniture of the Swartzes' for $50; one parcel of real property for $2,000 (which he later sold for $10,000); and another parcel of realty for $4,201.54, the balance of the unsatisfied judgment (which he traded for a 1,232-acre farm in California having, according to Adams' deposition, an equity in excess of $53,000).

Neither Violet nor her husband had any knowledge of the execution sales of the real property. Indeed, Violet continued to pay real property taxes on the property that Adams had purchased, even after the period of redemption had expired. Adams made no attempt to notify Violet of the sales and, when questioned in his deposition regarding the payment of the taxes, replied, "I thought that was a pretty good deal, somebody else paying my taxes." Thereafter, Violet learned of the sales, and this action was commenced.

3. Violet advances several theories to support her position that the trial court erred in granting summary judgment for Adams. We need discuss only one: whether the notice given of the execution sales was sufficient to satisfy the due process requirements of the fourteenth amendment.

It is undisputed that, in giving notice of the execution on the Swartzes' property, Adams complied with the then-existing provisions of NRS 21.130.[1] These provisions required that notice be posted in several specified places and that it be published in a newspaper in the county. In addition, Adams claims to have arranged for notice to be posted on the property itself. He argues that this latter measure, beyond what was

---

[1]NRS 21.130 has since been amended to require notice by mailing. Act of May 13, 1975, ch. 433, 1975 Nev. Stats. 651.

required by law, demonstrates a genuine effort to convey notice to appellant rather than any intent to conceal the sale.

Adams' argument is not convincing. It remains unexplained why he did not simply mail notice directly to the Swartzes— a simpler and more effective way of ensuring actual notice. Since Violet and her husband were Adams' former clients, their address was necessarily known or easily discoverable by him. Under the facts of this case, Adams' methods of providing notice, even though complying with the statutory requirements then in force, were insufficient to satisfy due process demands as set forth by the United States Supreme Court.[2]

The leading case on the requirements of due process in giving notice of a pending legal proceeding is Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950). In that case the supreme court held that publication in a local newspaper, in accordance with N.Y. Bank. Law § 100-c(12) (McKinney 1950), of an accounting for a common trust fund did not satisfy procedural due process. In so holding, the Court expressed the following general principles, at 314–315, 320:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . .
> . . . The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. . . .
> . . . .
> . . . Publication may theoretically be available for all the world to see, but it is too much in our day to suppose that each or any individual beneficiary does or could examine all that is published to see if something may be tucked away in it that affects his property interests.

Although *Mullane* contained dicta suggesting that publication might be sufficient where tangible rather than intangible

---

[2] It should be noted that, where the statute itself is unconstitutional, it has been held that the giving of notice beyond that required by statute is irrelevant. *See* Wuchter v. Pizzutti, 276 U.S. 13 (1928), in which the High Court held unconstitutional a nonresident motorist statute requiring only service on the secretary of state, even though the defendant in . that case had been personally served.

property was concerned, subsequent cases have held to the contrary in appropriate factual contexts. In Walker v. City of Hutchinson, 352 U.S. 112 (1956), the court held that notice by publication of the condemnation of property was a denial of due process where the name of the owner, a resident of the state, was known to the condemning party. The court noted, at 116:

> In *Mullane* we pointed out many of the infirmities of such notice and emphasized the advantage of some kind of personal notice to interested parties. In the present case there seem to be no compelling or even persuasive reasons why such direct notice cannot be given.

The same observation could be made in the instant case. *See also* Schroeder v. City of New York, 371 U.S. 208 (1962), in which publication and posting near the property being condemned were held to be a denial of due process.

The High Court has, moreover, indicated that in providing reasonable notice one must consider any known disabilities, physical or practical, of the party to be informed. In Covey v. Town of Somers, 351 U.S. 141 (1956), the Court held that notice by mailing, posting, and publication was insufficient where the individual was a known incompetent without the care of a guardian. In Robinson v. Hanrahan, 409 U.S. 38 (1972), it was held that notice of a forfeiture proceeding mailed to the owner's home was insufficient when the individual was known to be in jail at that time. In the instant case, Violet's husband, who was known by Adams to be in charge of the couple's business affairs, was blind. Had Adams wished to convey notice of the proceeding, he certainly would have employed a more direct means, in view of this disability.

This court has previously rejected mere compliance with statutory provisions where, under the facts of the case, such compliance falls short of due process standards. In Kotecki v. Augusztiny, 87 Nev. 393, 487 P.2d 925 (1971), it was held that notice to creditors of a decedent's estate, which used decedent's legal rather than her professional name, was insufficient as to those creditors who knew the decedent only by the latter name. In Golden v. Tomiyasu, 79 Nev. 503, 387 P.2d 989 (1963), *cert. denied,* 382 U.S. 844, on which the Adamses rely heavily, the court rejected charges of fraud and refused to set aside a trustee's sale foreclosing a deed of trust. In so doing, however, it noted as important that "the trustee gave information and knowledge to the trustors in addition to that

required by statute, and particularly putting them on notice that foreclosure was imminent; . . ." *Id.* at 517–518.

Adams objects to consideration of the due process issue, on the ground that it was not raised before the lower court. While the complaint and the points and authorities filed below in opposition to Adams' motion for summary judgment purport to advance a theory of fraud, they are sufficient to state a claim for denial of due process. NRCP 8(a) requires a pleading to contain: "(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled." It does not require the legal theory relied upon to be correctly identified. *See* Ablah v. Eyman, 365 P.2d 181, 193 (Kan. 1961); Appleton v. Citizens' Cent. Nat'l Bank, 83 N.E. 470 (N.Y. 1908), *aff'd* 216 U.S. 196 (1910).

Paragraph 12 of the complaint alleges:

> That Defendant HERMAN M. ADAMS executed upon the real property of Plaintiff and her husband, . . . that said Defendant wilfully, intentionally, and fraudulently failed to employ any method of publication reasonably calculated to give Plaintiff and her husband notice of the attachment and sale on execution of said real property; . . .

The points and authorities in opposition to the motion contain similar allegations. The prayer of the complaint asks for such relief as the court finds just and equitable.

While Violet failed to support her factual allegations by affidavit or other evidence as required for opposition to a motion for summary judgment, this omission justifies the order only with respect to facts put in dispute by the pleadings, i.e., the bona fide status of the present owners of the property. The facts establishing that due process was denied are not in dispute: the type of notice provided and the Swartzes' and Adams' former attorney-client relationship, from which may be inferred Adams' knowledge of the Swartzes' whereabouts and of Mr. Swartz' disability. Therefore, they need not be supported by affidavit.

The order granting summary judgment and dismissing the complaint is error. Since the execution sales were conducted

so as to deny the owners of the property due process of law, the ideal remedy would be to return that property to the former owner pending constitutionally sufficient proceedings. Unfortunately, this may no longer be done without injury to innocent third parties who are bona fide purchasers of the property. However, Violet has also sought compensatory relief in her complaint. We therefore reverse and remand the case to the court below for appropriate proceedings consistent with this opinion.

BATJER, C. J., and ZENOFF and GUNDERSON, JJ., concur.

THOMPSON, J., dissenting:

The issue presented to this court is not as stated in the majority opinion.[1] The constitutional problem of procedural due process in effectuating execution sales is not before us. That issue has been abandoned. Only the claim of Violet Swartz to recover damages for an alleged fraud is tendered. Consequently, the predicate of the majority opinion does not exist, and all discussion therein premised upon Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950), is not relevant to our review.

Mr. Adams, a Nevada attorney, represented Violet Swartz and her husband Richard in certain litigation. That professional relationship was terminated by Richard Swartz in June 1964. The Swartzes then owed Adams an agreed fee of $5,000 for services rendered. That fee was not paid. In 1968, Adams obtained judgment therefor and satisfied the same through execution upon two parcels of unimproved real property owned by the judgment debtors. Adams was the highest

---

[1]Appellant's opening brief states:

"This action was originally brought by Appellant Violet Swartz to set aside certain execution sales after the redemption period had run. Appellant has also asked for compensatory and punitive damages, and it is this money relief which Appellant seeks exclusively now.

"Respondent Herman M. Adams (hereinafter "Respondent Adams") obtained a judgment for attorney's fees against Appellant and her now deceased husband and levied execution thereon. Respondent Adams then, by bidding in parts of his judgment, purchased certain personal and real property formerly belonging to Appellant. When Appellant failed to redeem within the statutory period, Respondent Adams conveyed the real property he had purchased to two local realtors, Marshall S. Ashcraft and Mary Bartsas, in separate conveyances.

"Appellant's action sought to have the deeds to Ashcraft and Bartsas set aside, but although originally named as Defendants herein, both were dismissed as parties to the suit. Neither of these Orders is appealed."

bidder at the sheriff's sale and received a certificate of sale which he recorded March 20, 1969. On March 31, 1970, the sheriff executed and delivered his deed to Adams which was duly recorded on April 2, 1970. No effort was made by the Swartzes to redeem the property within the statutory period. Mr. Swartz since has died.

The execution sale fully complied with our statutory law. Violet Swartz has abandoned her effort to set aside the execution sale, and seeks only damages for an alleged fraud.

No basis for the charge of fraud appears in this record. Adams, as a judgment creditor, did only that which he was authorized to do. The contention that he was precluded from causing property to be sold to satisfy his judgment because of the prior attorney-client relationship is unsound. Indeed, supportive authority is not offered. An attorney may satisfy his judgment in the same manner as other judgment creditors. His decision to do so according to statutory law obviously cannot be the predicate for a charge of fraud.

Although it is claimed that the price bid by Adams for the property was grossly inadequate, the record is wholly unsatisfactory as to the value of the land.

Moreover, inadequacy of price standing alone does not tend to establish fraud. Golden v. Tomiyasu, 79 Nev. 503, 387 P.2d 989 (1963); Brunzell v. Woodbury, 85 Nev. 29, 449 P.2d 158 (1968); Turner v. Dewco Services, Inc., 87 Nev. 14, 479 P.2d 462 (1971). Thus, if one were inferentially to conclude that an inadequate price was paid, a claim of fraud still is without foundation. For these reasons, I would affirm the summary judgment entered below and, therefore, respectfully record my dissent from today's opinion.