OPINION OF THE COURT
W. Patrick Falvey, J.
This matter having been brought by order to show cause dated June 2, 1989, for Yates County and/or Yates County Treasurer Robert Kingsley Hull (Treasurer) to show cause why a deed conveying real property located at 206-208 East Main Street, Village of Penn Yan, to the County of Yates and formerly owned by Leland C. Lounsberry (also known as Sonny Lounsberry) should not be set aside and vacated and why the respondents should not be directed to reconvey said property to Mr. Lounsberry upon the tender of any and all amounts necessary to make the county whole as a result of certain delinquent taxes, penalties and interest due on the aforesaid real property and for such other and further relief as may be appropriate under the circumstances.
This proceeding results from the action taken by the Treasurer under article 10 of the Real Property Tax Law with respect to tax sales for failure to pay taxes.
A hearing was had on June 21, 1989 whereupon petitioner, by his attorney-in-fact, Grace Lounsberry, appeared as well as the respondents, represented by the Yates County Attorney.
At the outset the proof did not establish any improprieties or defects in law with the procedures carried out by the Treasurer in perfecting the tax sale under article 10 of the Real Property Tax Law.
The first witness was Robert Kingsley Hull, Yates County Treasurer since January 1, 1986. He stated his familiarity with the Lounsberry property and certain legal decisions affecting the status of tax sales, more specifically Mennonite Bd. of Missions v Adams (462 US 791 [1983]). This case *709 invalidated a tax taking provision of the State of Indiana involving (according to the court) inadequate notice to lien-holders who lost their interest in real property when the property was taken in an in rem tax foreclosure. Similar proceedings in New York State are governed by article 11 of the Real Property Tax Law.
The Treasurer indicated that tax sale procedures concerning this property were pursuant to article 10 of the Real Property Tax Law. Furthermore he testified that local county law (Resolution No. 171-87) states that Yates County will grant the delinquent taxpayer an additional 30 days to pay all taxes, interest and costs before the subject property is noticed for public auction. The Lounsberry property was one of these parcels. The petition contained a copy of just such a notice to Mr. Lounsberry dated January 4, 1989. This notice indicated that Mr. Lounsberry would have until February 7, 1989 to pay any amounts due.
The Treasurer further testified as to what happened if a person having taxes due for 1985, 1986 and 1987 came into the Treasurer’s office to pay them prior to the 1st of November of 1987. He indicated that person would have had the option of paying 1987 taxes only or 1985 or 1986 only or all of the taxes. However if they came in on November 1st or after they would be required to pay all taxes due for the years 1985, 1986 and 1987. This situation would not arise now as a result of Matter of Elinor Homes Co. v St. Lawrence (113 AD2d 25) which found that once taxes take certificate form all prior years must be collected simultaneously.
Grace Lounsberry, mother of Mr. Lounsberry, testified to a limited power of attorney with disability clause indicating Leland C. Lounsberry appointed her his attorney-in-fact. Said power of attorney was limited but specified that she could bring any proceedings necessary to redeem Mr. Lounsberry’s property located at 206-208 East Main Street. Said power of attorney was executed on May 25, 1989 by Mr. Lounsberry before a notary public and also witnessed by his daughter, Cathy Lounsberry.
Grace Lounsberry testified that Mr. Lounsberry had been an alcoholic for approximately five years. He had been hospitalized on at least two occasions while employed at P&C where he had worked for approximately 32 years. However, he was terminated from P&C due to his failure to complete in-patient alcoholism treatment required by P&C.
*710 Mr. Lounsberry now works on a part-time basis, approximately 30 hours per week, at Tom’s Super Duper in the produce department.
It was her opinion that Mr. Lounsberry is not as bad now as he was before. Furthermore, she does not pay any other bills or do other things for him.
Mrs. Lounsberry still feels, however, that Mr. Lounsberry is an alcoholic and the limited power of attorney was necessary as he was going in for surgery. Therefore it was necessary to have someone act in his stead a» he would not be able to appear.
Mrs. Lounsberry first became aware of the delinquent taxes on the subject property in 1987 when Mr. Lounsberry advised her of same. She testified as to a check dated November 2, 1987, drawn on her checking account and made out to the "Yates Co. Treasurer” in the amount of $1,428.63, with a memo saying, "Sonny’s taxes”. Mrs. Lounsberry indicated she cashed in a bond to pay the taxes and that Mr. Lounsberry had told her more taxes were due but he did not have the money to pay them. Mrs. Lounsberry further testified that she appeared in person at the Yates County Treasurer’s office to pay the taxes on Monday, November 2, 1987. At that time, she was told by office personnel that other taxes were due but the clerk did not state what they were.
Cathy Lounsberry, daughter of Mr. Lounsberry, testified that she had lived with her father from August 1984 through November 1985. It was her opinion that her father was an alcoholic and testified as to observations while living with him. For example, when he woke up in the morning he would drink straight vodka and do the same at lunch. He also would drink at local bars daily after work. Meals were not eaten until 8:00 or 9:00 p.m., after he arrived home from drinking.
She recalled that when she lived with Mr. Lounsberry he lost his job with P&C. At that time he asked her to leave the home as he blamed her for the loss of his job. However, she testified the reason he lost his job at P&C was because he failed to complete the in-patient alcoholism clinic. This clinic had been his third alcohol program, prior to that he had attended programs at Taylor Brown Hospital and the Bath V.A.
Since 1985 she had observed him at varying times and says that he still drinks. It is her opinion that although he did regularly come and go on a daily basis he is irrational. She *711 also testified that the gas service in the house was turned off either in 1984 or 1985 for failure to pay utility bills and there has been no gas service since that time. Further, there is a mailbox at his home except that the mail was received in a sporadic manner. She said that sometimes his girlfriend would receive the mail and put it in her purse as she was also an alcoholic and Mr. Lounsberry wouldn’t see it.
The Treasurer was recalled by the County Attorney. He stated it was an office practice, begun prior to his tenure, to accept payment on the first business day of the next month, if the previous month ended on Saturday or Sunday as if received in the prior month. It was his recollection that no exception was made to this practice. It was felt that if the office accepted tax payment by mail postmarked "October” but received in November, then someone who came in personally on the first business day, after a month ended on the weekend should receive the same treatment.
The court first addresses respondent’s motion, made at the hearing, to dismiss the petition, based on the taxpayer’s alleged incompetence to give Grace Lounsberry a power of attorney to enable her to bring this action. A party given a power of attorney may institute an action in name of her principal. (General Obligations Law § 5-15021; see also, Zaubler v Picone, 100 AD2d 620; Matter of Stokes v Village of Wurtsboro, 123 Misc 2d 694.) At the hearing, no proof was presented showing the taxpayer to be incompetent at the time the power of attorney was executed, i.e., May 25, 1989. In fact, Mrs. Lounsberry stated on cross-examination that the taxpayer was better now than he had been. Respondent’s application is thus denied.
Respondent also argues that the petition must be dismissed since it was brought after the four-month statutory period for commencing the proceeding had run. (CPLR 217.) It is determined that "the determination to be reviewed” became "final and binding upon the petitioner” on February 7, 1989, the last day that respondent would accept payment from petitioner to buy back the property, pursuant to Yates County Legislature Resolution No. 171-87. Therefore, petitioner’s action is timely. (See, Edelman v Axelrod, 111 AD2d 468; Matter of Cabrini Med. Center v Axelrod, 107 AD2d 965.)
Turning to the merits of the petition, the issue to be decided is whether the statutory notice of tax sale, as given by the Treasurer, was adequate under the circumstances.
*712 The leading case in this area is Covey v Town of Somers (351 US 141) wherein the Supreme Court held that compliance with New York Tax Law provisions for judicial foreclosure of tax liens on real property would not afford notice to a known, unprotected incompetent and, thus, taking of her property would be without due process of law. Since Covey (supra), the New York courts have required something more than the statutory notice for the taking of real property by tax sale from a taxpayer who is a known incompetent whether adjudicated or not. (See, e.g., Goldmyrtle Realty Corp. v Woellner, 36 AD2d 968.)
In Blum v Stone (127 AD2d 549) the court held that reputation evidence regarding the property owner’s mental capacity was probative evidence to be permitted at a hearing on whether the person was a known but unadjudicated incompetent and, therefore, entitled to more stringent notice procedures than that afforded by statute or local law. However, Covey (supra) did not require proof that the party serving notice or the Treasurer’s office knew or should have known that the owner of said property was an unprotected incompetent.
Here, testimony by the taxpayer’s mother and daughter clearly established that the taxpayer is an alcoholic, and his alcoholism affected his ability to manage his affairs to varying degrees throughout the years that he failed to pay his taxes. Based upon his employment history and his frequenting of local bars, as testified to by the daughter, the court concludes that the taxpayer is a known incompetent, within the purview of Covey (supra). Thus, the statutory notice as provided by the Treasurer, although proper, was not adequate notice to this taxpayer of the tax sale.
The court is also influenced by the unique circumstances of this case; that is, Mrs. Lounsberry’s attempt to pay Mr. Lounsberry’s taxes on November 2, 1987. The respondent Treasurer and his predecessor’s custom of allowing payment of only a portion of delinquent taxes up to November 1st of each year, and giving a walk-in customer on the first business day of the month following a month ending on the preceding weekend, the same treatment as if the taxpayer had mailed and postmarked payment in the prior month, although commendable and accommodating, worked in this case to the taxpayer’s detriment. For, if all back taxes were payable simultaneously, the taxpayer would have known the total amount due and could have paid in full at that time. Simi *713 larly, in Murphy v Kassay (71 AD2d 696) taxpayer sent his 18-year-old son with a blank check to the County Treasurer’s office to pay the delinquent taxes. The clerk at the Treasurer’s office gave the boy the amount due on the 1968 taxes, but not the amount due for the 1967 taxes. The court citing the law’s traditional abhorrence of a forfeiture of property returned the case for a new trial. Furthermore, the loss of one’s property is such a harsh penalty for the nonpayment of a tax while the taxing body can always be made whole by the payment of arrears with interest and expenses. (Glantz v Scaduto, 96 Misc 2d 1004.)
Therefore, considering the record in its entirety, the petition herein is granted. Respondents are hereby ordered to permit redemption of the tax lien by the property owner and transfer said property back to Lelarid C. Lounsberry upon his or his agent’s payment, by certified check or bank draft within 20 days of the filing of this order in the Yates County Clerk’s office, of all the county’s expenses incurred with respect to this property, including penalties, interest, advertising costs ánd any delinquent taxes due to date of this decision. Upon petitioner’s failure to make said payments in the time specified, the stay of sale is vacated and the respondent Treasurer may proceed with the tax sale.